UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

CIVIL ACTION NO. 1:14CV-70-JHM

JOHN "JACK" RICKETT                                                                    PLAINTIFF

VS.

DONALD E. SMITH and
PHOENIX SYNERGIES, INC.                                                          DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Donald E. Smith and Phoenix Synergies, Inc.'s Motion to Dismiss [DN 5] and Motion to Strike Affidavits, Exhibits, and Allegations [DN 14]. Fully briefed, these matters are ripe for review.

## I. BACKGROUND

This action arises out of alleged defamatory statements made over internet radio about Plaintiff John "Jack" Rickett ("Rickett"). Rickett alleges that the defamatory statements first appeared on the website maintained by Defendant Phoenix Synergies, Inc. ("PSI") on May 23, 2014. The statement is as follow:

COMPANY NEWS

STATEMENT FROM BOARD OF DIRECTORS

RE: Doug Mitchell and John "Jack" Rickett

Mr. Mitchell was offered a position with the company and respectfully declined the offering.

Mr. Rickett temporarily served in the position of President of the company pending its formation.

Mr. Rickett's position was provisional and he failed to meet the provisions required by a temporary officer.

> Mr. Rickett does not now nor has he ever had ownership interest, stock or otherwise, in Phoenix Synergies Inc., a Texas Corporation.
>
> Through the normal course of business, it was discovered that Mr. Rickett had previously sold and assigned his patents and ideas to several other companies and or individuals prior to making arraignments to sell same to Phoenix Synergies Inc. (PSI)
>
> The Board of Directors of PSI was finally able to track down the patents and secure them from other parties and has since filed the clean patents in the name of the company. When confronted by this information, Mr. Rickett was found to be oblique or unresponsive as to how he initially obtained the original idea.
>
> Mr. Rickett received a substantial amount of money while he consistently acted outside of his authority and the provisional parameters of his position.
>
> His actions were unauthorized, counter-productive and if allowed to continue could have been seriously damaging to the company and the upstanding reputations of the Officers, Board of Directors and owners.
>
> Thus Mr. Rickett was released by the Board of Directors.

[Compl., DN 1, at 5-6]. On the same day, David Rice, host of the blogtalk radio show "Phoenix Rising Radio," read the statement that appeared on the website. Plaintiff further alleges that the following occurred on the radio show:

> [D]uring the May 23, 2014 radio show Mr. Rice implied having inside knowledge about recent events at PSI and told his audience that the company had been doing a lot of things behind the scenes and that things were kind of slow and being held back because of the internal issues and problems with the company, but that those problems have now been resolved. Further, Mr. Rice stated words to the effect of [there are] a lot of people out there in the world who would take advantage of good people. Evil succeeds when good men and women do nothing or say nothing. All of these comments by Mr. Rice were understood by the audience to be in reference to the Plaintiff and his dismissal by PSI.

[Compl., DN 1, at 6].

Plaintiff Rickett claims his relationship with PSI began in November of 2013 when Defendant Donald Smith contacted Plaintiff concerning his patents for styrofoam reclamation

2

technology. Plaintiff, a self-taught engineer and inventor, created technology to recycle styrofoam into plastic pellets that resulted in two different patents, Patent US 6,663,773 B1 and Patent US 6,890,437 B2 (hereinafter, "Patents"). The Patents were first held by Densified Solutions LLC and then they were acquired by Jack Schoenthaler after the bankruptcy of Densified Solutions.

In December of 2013, Plaintiff alleges that Smith drove to Kentucky to meet with him and to discuss the formation of PSI. Smith told Plaintiff that he formed PSI with others who knew about styrofoam reclamation and that he intended to raise enough capital to purchase the Patents held by Jack Schoenthaler. According to Plaintiff, during that meeting, Smith also hired him to be the president of PSI for $2000 a month and provided him with a computer and printer to perform work for the company. However, as explained by Plaintiff, his duties and responsibilities as president of PSI were extremely limited. In fact, he was told that he could not communicate with PSI's counsel, Kathleen Pickett.

In late January, Plaintiff assigned his future interest in the Patents to PSI. Additionally, around the same time, Smith, on behalf of PSI, issued Plaintiff 50 million preferred shares and 10 common shares of PSI out of a total 500 million shares initially offered. Plaintiff and PSI's relationship soured in February of 2014 after a disagreement about the capitalization plan listed on PSI's website. It appears that Plaintiff's contact with Smith over the capitalization plan was the catalyst for the alleged defamatory statements made on May 23, 2014.

Defendants move to dismiss Plaintiff's Complaint based upon lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and improper venue under Fed. R. Civ. P. 12(b)(3). Plaintiff Rickett is a citizen of Kentucky. Defendant PSI is incorporated under the laws of Texas and has its principal place of business in Florida. Defendant Smith is a citizen of Florida.

3

## II. ANALYSIS

### A. Personal Jurisdiction

In a diversity case, a federal court determines whether personal jurisdiction exists over a nonresident defendant by applying the law of the state in which it sits. Third Nat'l Bank v. WEDGE Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). The Court applies a two-step inquiry to determine whether it may exercise personal jurisdiction over a nonresident defendant: "(1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." Brunner v. Hampson, 441 F.3d 457, 463 (6th Cir. 2006).

If the court determines the jurisdictional issue on written submissions only, the plaintiff "need only make a prima facie showing of jurisdiction." Compuserve, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). When making such a determination without an evidentiary hearing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." Id. Furthermore, the court must "not consider facts proffered by the defendant that conflict with those offered by the plaintiff." Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

Looking first to Kentucky's long-arm statute, the Kentucky Supreme Court has found that the statute requires a two-prong showing before a court can exercise personal jurisdiction over a nonresident. Caesars Riverboat Casino, LLC v. Beach, 336 S.W.3d 51, 57 (Ky. 2011). First, the Court must find that a nonresident's conduct or activities fall within one of nine enumerated provisions in KRS 454.210. Only two of those provisions, KRS 454.210(2)(a)(1), (4), are applicable to the facts underlying the present motion against Plaintiff. Kentucky's long-arm statute states, in pertinent part, as follows:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
>
> > 1. Transacting any business in this Commonwealth;
> >
> > . . .
> >
> > 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth[.]

KRS 454.210.

If this first prong is satisfied, then the second prong requires the Court to determine if the Plaintiff's claim arises from the Defendants' actions. See K.R.S. § 454.210(2)(b) ("When jurisdiction over a person is based solely upon this section, only a claim arising from acts enumerated in this section may be asserted against him.") Accordingly, "even when the defendant's conduct and activities fall within one of the enumerated categories, the plaintiff's claim still must 'arise' from that conduct or activity before long-arm jurisdiction exists." Caesars, 336 S.W.3d at 56. This requires a showing of "a reasonable and direct nexus between the wrongful acts alleged in the complaint and the statutory predicate for long-arm jurisdiction[.]" Id. at 59. This analysis should be undertaken on a case by case basis, "giving the benefit of the doubt in favor of jurisdiction." Id.

In the present case, Plaintiff identifies the following four instances in which Defendants availed themselves of personal jurisdiction in Kentucky: (1) "it was through central Kentucky that Smith funneled requests for investment packages and from where around 1,000 such packages were sent out to potential investors"; (2) "[i]t was further in Kentucky where Smith had

earlier recruited Rickett . . . and where Rickett, at Smith's directive, updated the patent technology"; (3) "it was from Kentucky where Rickett authorized a letter of inquiry to PSI's counsel in Houston, Texas"; (4) "it was in Kentucky where the impact of Smith's attack was felt." [Pl.'s Resp., DN 12, at 8]. Based on Plaintiff's factual allegations, the Court believes that KRS 454.210(2)(a)(1) provides the necessary jurisdictional hook to meet the first prong for Kentucky's long-arm statute. Particularly, the alleged facts show that Defendant Smith came to Kentucky in December for the purpose of hiring Plaintiff and providing him with a computer and printer to carry out his duties. Considering KRS 454.210(2)(a)(1) allows jurisdiction where the party conducts *any business* in Kentucky, it is difficult to believe that the hiring of a top corporate officer would not be considered a business transaction for the purposes of the statute. Thus, because the Court finds KRS 454.210(2)(a)(1) applies, there is no reason to determine whether KRS 454.210(4)(a) is relevant.

Next, Plaintiff must demonstrate that his defamation claim arises from KRS 454.210(2)(a)(1). See Caesars Riverboat, 336 S.W.3d at 58. Defendants contend that Plaintiff fails to demonstrate how his claim arises from Defendants' alleged contacts in Kentucky. Again, despite Defendants' arguments to the contrary, the Court finds that there is a fairly simple relationship between Defendants' hiring of the Plaintiff in Kentucky and the allegedly defamatory statements concerning Plaintiff's inability to carry out his job as president of PSI. If the statement about Plaintiff had involved his personal life or any other facet of his life besides his work with PSI, this issue would be much more difficult. However, the press release dealt directly with Plaintiff's employment with PSI, and thus, his claim arises directly from Defendants' contacts in the Commonwealth. Also, while the Defendants are correct that Defendant Smith's contacts should be assessed individually, separate from Defendant PSI, his

status as an employee or agent of PSI does not shield him from jurisdiction. Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 1487, 79 L. Ed. 2d 804 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction."). After all, it was Defendant Smith who allegedly came to Kentucky to hire Plaintiff. See Bugher v. Collins, No. 1:06CV-62-M, 2006 WL 2088278, at *4 (W.D. Ky. July 24, 2006) (finding personal jurisdiction for the defendant employee where he personally conducted business in Kentucky, "albeit for his employer."). Therefore, his contacts are no different from those of Defendant PSI.

After finding that Kentucky authorizes jurisdiction, the Court must determine whether the exercise of personal jurisdiction conforms with due process. "The relevant inquiry is whether the facts of the case demonstrate that the nonresident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" Theunissen v. Matthews, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The Sixth Circuit has identified three criteria for determining whether specific in personam jurisdiction[1] may be exercised.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

---

[1] The parties briefly discuss the application of general personal jurisdiction. The Court does not consider general personal jurisdiction a viable option in the present case considering that the contacts in Kentucky must be "so 'continuous and systematic' as to render [Defendants] essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011) (quoting International Shoe, 326 U.S. at 317). This is clearly not supported by the facts in this case.

7

enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Southern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

As for the first Mohasco prong, Defendant PSI through its agent, Defendant Smith, purposely availed itself to Kentucky by hiring Plaintiff within the state and providing him materials for his job. Possibly, if Defendants had simply traveled to Kentucky for the purpose of hiring some low-level employee, then the question of personal jurisdiction would be a very close one. However, this was not the case here. Instead, Defendants went to Kentucky to hire the president of the company, arguably one of the most visible positions in any company. Additionally, Defendants' contacts are not limited to the hiring of Plaintiff but also include the selling of securities in the Commonwealth and having Plaintiff update his work on the Patents on behalf of PSI. The combination of these contacts clearly shows that Defendants purposely availed themselves to the privilege of acting in Kentucky.

Next, due to the nature of the cause of action in the present case, the last two prongs of the Mohasco should be discussed in the context of the "effects test," which emerged from Calder v. Jones. Calder involved an allegedly libelous article written about an actress living in California by a national magazine in Florida. Calder, 465 U.S. at 784. In finding personal jurisdiction proper in Calder, the Supreme Court considered the following:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

Calder, 465 U.S. at 788-89. Applying the "effects test" in Reynolds v. International Amateur Athlete Federation, the Sixth Circuit found no personal jurisdiction where an international athletic organization published a news release about an athlete living in Ohio. Reynolds, 23 F.3d 1110 (6th Cir. 1994). In examining the facts of Reynolds, the Sixth Circuit differentiated the case with the facts of the Calder in the following way:

> First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio; Ohio periodicals disseminated the report. Fifth, Ohio was not the "focal point" of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself, enough to create personal jurisdiction. Finally, although Reynolds lost Ohio corporate endorsement contracts and appearance fees in Ohio, there is no evidence that the IAAF knew of the contracts or of their Ohio origin.

Id. at 1120.

The facts in this case fall much closer to Calder than Reynolds. While the press release posted on PSI's website does not specifically mention Kentucky, it is hard not to view the material as directly relating to Plaintiff's work as president, which was accomplished within the state of Kentucky. Moreover, unlike the potentially unknown readership in Reynolds, Defendants knew that shares of PSI were sold to individuals in Kentucky and that there was a real possibility that those individuals would see the press release. It is clear that Defendants' contacts with Kentucky stretch beyond those found in Reynolds and involve more than the sole point of contact being the posting of a statement on a website.[2] Therefore, applying the "effects

---

[2] Defendants attempt to rely on Bailey v. Turbine Design, Inc., 86 F. Supp. 2d 790 (W.D. Tenn. 2000) to demonstrate a lack of personal jurisdiction in the present case. However, Bailey is easily distinguishable in that the defendants in that case had no other contacts with the forum state besides the posting on the website. Bailey v. Turbine Design, Inc., 86 F. Supp. 2d 790, 795 (W.D. Tenn. 2000) ("There is no evidence that either [defendant] had any contacts with Tennessee other than the posting of the site which, it is assumed, is available to anyone anywhere

test" to this case, the Court finds that the Defendants have sufficient contacts for personal jurisdiction to be proper.

**B. Venue**

Defendants next move to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue. Plaintiff makes two concessions concerning venue. First, Rickett admits that he may not rely on 28 U.S.C. § 1391(b)(3) for venue. Second, he concedes that venue could be proper in the Middle District of Florida based on 28 U.S.C. § 1391(b)(1). Notwithstanding these concessions, Plaintiff asserts that venue is proper in the Western District of Kentucky.

Plaintiff relies on 28 U.S.C. § 1391(b)(2) to support his proposition that venue is proper. Section 1391(b)(2) provides that "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]" 28 U.S.C. § 1391(b)(2). Plaintiff asserts that since he resides in Kentucky and the injury resulting from the alleged defamation occurred in Kentucky, venue is proper under § 1391(b)(2). For the most part, Defendants fail to present factual or legal arguments as to why venue cannot lie based on § 1391(b)(2). Therefore, the Court will assume that Defendants concede to Plaintiff's factual arguments for venue.

Instead of focusing on demonstrating improper venue, Defendants seek to persuade the Court to transfer venue to the Middle District of Florida based on 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a

---

with access to the Internet."). In contrast, Defendants business dealings in the state of Kentucky, including the selling of stocks and the hiring of Plaintiff, provide significantly more contacts than found in <u>Bailey</u>.

district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). As previously mentioned, Plaintiff concedes that this matter could have been brought in the Middle District of Florida. Therefore, the dispute over the transfer of venue revolves around the six factors the Court must consider:

> (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based upon the totality of the circumstances.

National City Bank v. Breeden, 2009 WL 3514587, *1 (W.D. Ky. Oct. 29, 2009) (citing Kattula v. Jade, 2007 WL 1695669 (W.D. Ky. June 8, 2007)). The moving party generally has the burden of proving that transfer is appropriate and the plaintiff's choice of forum is entitled to considerable weight. Travelers Property Casualty, 2005 WL 1038842, *4 (S.D. Ohio May 3, 2005); Bacik v. Peek, 888 F.Supp. 1405, 1414 (N.D. Ohio May 14, 1993).

**1. Convenience of Parties**

Defendant Smith resides in Florida and Defendant PSI has its principal place of business in Florida as well. Plaintiff Rickett resides in Kentucky. Both Defendant Smith and Plaintiff Rickett contend that they have medical conditions that would present difficulty in traveling to another state for depositions and hearings. As a general matter, "[a] transfer is not appropriate if the result is simply to shift the inconvenience from one party to another." Wayne County Employees Ret. Sys. v. MGIC Inv. Corp., 604 F.Supp.2d 969, 975 (E.D. Mich. 2009) (citing Evans Tempcon, Inc. v. Index Indus., Inc., 778 F.Supp. 371, 377 (W.D. Mich. 1990)). We find that this factor is a "wash" for both parties.

**2. Convenience of Witnesses, Access to Proof, and Locus of Operative Fact**

At this time, it does not appear that many witnesses are necessary for this case other than David Rice and possibly Jack Schoenthaler. Considering the limited number of witnesses, it is doubtful that this is a significant factor in deciding whether to transfer venue to Florida. In fact, one of the potential witnesses, Schoenthaler, submitted an affidavit stating that he would be willing to travel to Kentucky to testify. [Aff. Jack Schoenthaler, DN 12-5, at 1]. Additionally, the Court is not persuaded that access of proof is a real concern in this case. While Defendants vaguely claim that the bulk of the business records are in Florida, this case is focused primarily on an alleged defamatory statement made over the internet along with multiple emails sent among the individuals involved with PSI. Therefore, most of the evidence appears to be easily accessible in any forum due to it being electronically available.

**3. Availability of Process to Compel Attendance of Unwilling Witnesses.**

The Court believes that this factor favors neither party. Plaintiff broadly asserts that Kentucky witnesses will be unable to travel to Florida because of the costs involved. This could equally be the case for Florida witnesses.

**4. Relative Means of the Parties**

Plaintiff states that he is unemployed and semi-disabled. Defendants fail to supply financial information that would justify transferring to Florida. Therefore, the Court believes this factor favors the Plaintiff.

**5. Forum Familiar with Governing Law**

Neither party has produced a contract that would suggest the existence of a choice of law provision. As a result, the Court must presume that Kentucky law will govern this dispute until shown otherwise. This factor favors the Plaintiff.

### 6. Plaintiff's Choice of Forum and Interests of Justice

Defendants have not shown why the Court should disregard Plaintiff's choice of forum or why the interests of justice are advanced by transferring this case to the Middle District of Florida. On the hand, Plaintiff contends that there will be difficulty if the case is transferred to Florida. Thus, this factor favors the Plaintiff.

Accordingly, balancing the above factors, the Court concludes that transfer of this matter to the Middle District of Florida is not warranted.

### C. Motion to Strike [DN 14]

Defendants seek to strike the entirety of Plaintiff's exhibits and affidavits filed in his response to Defendants' motion to dismiss. Starting with Plaintiff's affidavit, Defendants contend that the Plaintiff's use of "to the best of [the affiant's] knowledge and belief" in his affidavit suggests that the information contained within the document goes beyond his personal knowledge. In response, Plaintiff argues that Defendants misconstrue the law. Plaintiff explains that the law governing the use of affidavits in defense of motions to dismiss requires that they be based on personal knowledge, not a specific recitation of words in a document.

Statements not made upon personal knowledge are not to be considered by courts in determining a motion for summary judgment under Rule 56 and such statements should not be considered in a motion to dismiss under Rule 12(b)(2). See Totman v. Louisville Jefferson Cnty. Metro Gov't, 391 F. App'x 454, 464 (6th Cir. 2010) (finding that statements made to the best of a party's knowledge and belief go beyond personal knowledge and do not meet the evidentiary standard set forth in Rule 56); Plaskolite, Inc. v. Zhejiang Taizhou Eagle Mach. Co., Ltd., 2008 WL 5190049, at *5 (S.D. Ohio Dec. 9, 2008) (addressing a Rule 12(b)(2) motion to dismiss and refusing to consider portions of an affidavit based upon the belief of the affiant). The Court

13

rejects Defendants' initial argument that the Court strike Plaintiff's affidavits in toto based on Plaintiff's use of the phrase "knowledge and belief." Instead, as this Court explained in <u>Pixler v. Huff</u>, the Court must determine whether the statements are based upon "personal knowledge" or on just "conjecture, speculation, and belief." <u>Pixler v. Huff</u>, , 2011 WL 5597327, *6 (W.D. Ky. Nov. 17, 2011).

Defendants next move to strike portions of Plaintiff's affidavit that they believe are not based on personal knowledge. First, Defendants contend that Plaintiff does not have personal knowledge as to whether individuals in Kentucky actually sent money to Defendant Smith to purchase stock in PSI. On this issue, Plaintiff's affidavit specifically states, "I do not know how many of these people actually invested in Phoenix Synergies as their money was sent to Don down in Florida." [Pl.'s Aff., DN 12-1, at 2]. It is unclear what Defendants' objection to this statement is exactly, especially since Plaintiff acknowledges in his affidavit that he does not know if people actually sent money to Defendant Smith. Therefore, the Court is not willing to strike the portion.

In connection with the first objection, Defendants also argue that Plaintiff failed to authenticate the Stock Transfer Ledger attached to his affidavit. [Ledger, DN 12-1, at 5]. As to the Stock Transfer Ledger, Court did not need to rely on the Stock Transfer Ledger in examining facts relevant to personal jurisdiction and venue because Plaintiff submitted affidavits by individuals in Kentucky that purchased stock from PSI. As a result, Defendants' objection is moot.

Finally, Defendants object to four more pieces of evidence offered by Plaintiff: (1) the letter written by Michael Bratcher to Ms. Pickett in Houston; (2) the text messages referenced in Paragraphs 11 and 13 of Plaintiff's Affidavit [DN 12-1, at 4-5]; (3) the email correspondence

between James Carroll and Defendant Smith's assistant; and (4) Plaintiff's "Assignment of Invention and And [sic] of Letters Patent" [DN 1-1]. The Court did not rely on any of this evidence in determining personal jurisdiction and venue, and therefore, the Defendants' objections are denied as moot.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [DN 5] and Motion to Strike Affidavits, Exhibits, and Allegations [DN 14] are **DENIED**.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

October 30, 2014