UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CASE NO. 1:14-CV-70-GNS-HBB

JOHN RICKETT                                                                                                    PLAINTIFF

v.

DONALD E. SMITH and
PHOENIX SYERGIES, INC.                                                                                   DEFENDANTS

v.

JACK SCHOENTHALER                                                                         THIRD-PARTY DEFENDANT

## MEMORANDUM OPINION & ORDER

Plaintiff has moved to dismiss Defendants' counterclaims for lack of jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), respectively. (DN 31). Plaintiff has also moved to amend their counterclaim. (DN 34). Both motions are fully briefed and ripe for disposition.[1] The Motion to Dismiss (DN 31) is **GRANTED IN PART** and **DENIED IN PART**.

### I.     STATEMENT OF FACTS AND CLAIMS

Defendants Donald E. Smith ("Smith") and Phoenix Synergies, Inc. ("PSI")[2] have asserted counterclaims against Plaintiff John Rickett ("Rickett") and claims against Third-Party

---

[1] In opposing the motion to amend, Rickett argues futility. He reasserts his arguments in support of the motion to dismiss, further supports some arguments, and argues the proposed amendments insufficient to survive his original motion. Given this position, the Court has considered the two motions jointly. This effectively grants the motion to amend, and the Court's order will formally do so. The arguments in opposition to the motion to amend, including the additional support, have been considered in conjunction with the motion to dismiss, however. This consideration should prevent any prejudice.

[2] This opinion refers to all counterclaimants collectively as PSI except where Smith is named individually.

1

Defendant Jack Schoenthaler ("Schoenthaler"). Rickett has moved to dismiss these claims arguing the federal claims against him fail to state a claim upon which relief can be granted, and the remaining claims lack jurisdiction without the original jurisdiction provided in the federal claims. Defendants PSI and Smith are Texas and Florida citizens, respectively. Rickett is a citizen of Kentucky. Schoenthaler appears to be a citizen of Florida, though PSI now questions his citizenship.

The following facts are taken from PSI's proposed amended counterclaim. The current controversy stems from a soured business relationship. Rickett was involved in the creation of two patents purportedly enabling the recycling of Styrofoam. Defendants entered into a business relationship with Rickett sometime in late 2013 in a joint attempt to exploit those patents. Sometime in early 2014, the counterclaim alleges, Defendants began to realize the extent of Rickett's deceptive and illegal practices, including false (according to PSI) statements about his relationship to the company and the company's financial position. Rickett was formally terminated from his position as "president pro tem" on March 28, 2014. Through information disseminated on PSI's website and comments on internet radio, Defendants purportedly aired inaccurate statements about Rickett. PSI maintains the statements were true and were intended to limit the damage Rickett had done to their public image. Rickett maintains these publications give rise to claims of defamation and invasion of privacy. A more detailed recounting of these allegations is included in the Court's earlier ruling on the motion to dismiss. (Memo. Op. & Order 1-3, DN 17).

Since that prior ruling, Defendants have asserted counterclaims against Rickett plus third party claims against Schoenthaler, four unnamed individuals, and four unnamed corporations. (Ans. & Countercl., DN 26; Am. Countercl., DN 34-1). In its proposed amended counterclaim,

2

PSI asserts a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961-1968; a violation of the Computer Fraud and Abuse Act ("CFAA") claims, 18 U.S.C. § 1030(a)(c)(2), 1030(a)(4), and 1030(a)(5)(A); and a claim of unjust enrichment. (Am. Countercl. ¶¶ 77-107, 134-39,). As predicate acts to the RICO claim, Defendants assert mail, wire, and securities fraud, and the CFAA claims. Against Rickett alone, Defendants assert a claim for conversion. (Am. Countercl. ¶¶ 117-19). Against Rickett and Schoenthaler, they assert breach of contract for violation of a non-disclosure agreement ("NDA") and fraud. (Am. Countercl. ¶¶ 124-33).

As alleged in the proposed amended counterclaim, Rickett and the other parties engaged in a pattern of deceit before, during, and after their business relationship with PSI. Before the relationship began, Rickett and Schoenthaler collected up to $22 million from investors for the development of patents. (Am. Countercl. ¶ 26). PSI claims all counterdefendants knew these inventions were unworkable. (Am. Countercl. ¶ 78). Nonetheless, they serially formed "corporations, joint ventures and other enterprises" to deceive unsuspecting investors including Defendants. (Am. Countercl. ¶ 78).

Once the relationship was formed, they allege common law fraud, mail fraud, wire fraud, securities fraud, and breach of contract. The relationship was formalized with the signing of a non-disclosure agreement in November 2013. (Am. Countercl. ¶ 27). In January 2014, PSI hired Rickett as "president pro tem" with a $2,000/month salary. (Am. Countercl. ¶ 36). They also provided Rickett with a computer and printer for business purposes. (Am. Countercl. ¶ 37). Shortly after this, during an airing of the "Phoenix Rising" internet radio show, a call for investment of $65,000,000 was read to the audience. (Am. Countercl. ¶ 54). Rickett called into the show and, according to defendants, falsely reported they had already secured the requested

funding. (Am. Countercl. ¶¶ 56-57). Defendants allege Rickett desired to spread this misinformation to help his sale of counterfeit securities. (Am. Countercl. ¶ 60). Rickett and Schoenthaler also allegedly shared confidential information with investors in violation of the NDA during their employment with PSI. (Am. Countercl. ¶ 129).

While the relationship was ongoing, Defendants allege Rickett attempted to manufacture fake stock certificates in furtherance of his attempts to defraud investors and allegedly mailed the certificates.[3] (Am. Countercl. ¶¶ 85-86).

According to PSI, Rickett refused to return the computer that had been provided after the relationship foundered. (Am. Countercl. ¶ 74). After this refusal, and therefore in excess of any authorized access, Rickett used the computer to access and manipulate others' email, to transmit a program intending harm, and to hide his fraudulent activity. (Am. Countercl. ¶ 92). PSI concedes Rickett has now returned the computer but maintains its conversion claim for the loss of its use and consequential damages. (Am. Countercl. ¶¶ 120-22).

## II.     JURISDICTION

Defendants maintain federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. Alternatively, Defendants rely upon diversity jurisdiction for their counterclaims under 28 U.S.C. § 1332.

## III.     STANDARD

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) allow defendants to test the legal plausibility of the claims against them. Courts "treat[] all well-pleaded allegations in the complaint as true." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (citation omitted) (alteration in original). Given these assumed facts, "[d]ismissal is proper only 'if it

---

[3] It is unclear whether PSI alleges Rickett was successful in attempts to sell these fake ownership interests. (Am. Countercl. ¶ 87).

4

appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claims that would entitle him to relief.'" *Id*. (citation omitted). This does not unburden the pleader entirely. Complainants must "state[] a plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action[,]" are insufficient to show the pleader's entitlement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Complaints must provide "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Ordinarily, court's consideration of 12(b)(6) motions are limited to the pleadings, though the court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein[.]" *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (internal quotation marks omitted) (citation omitted).

Fed. R. Civ. P. 9(b) requires allegations of fraud to be pled with particularity. This requirement, however, must be read to coexist with the simplicity and concision mandated by Fed. R. Civ. P. 8. *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir. 1988). Pleading is further complicated in the context of a RICO claim, where courts are generally sensitive to the particularity requirements of Rule 9. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *MyVitaNet.com v. Kowalski*, No. 2:08-CV-48, 2008 WL 2977889 (S.D. Ohio July 29, 2008) (details of mail and wire fraud insufficiently pled). Plaintiffs pleading RICO claims with fraudulent RICO predicates must therefore strike a fine balance. "Even when heightened pleading standards apply, Plaintiffs must still comply with Rule 8's basic requirements." *Arnold v. Alphatec Spine, Inc.*, No. 1:13-CV-714, 2014 WL

5

2896838, at *5 (S.D. Ohio June 26, 2014) (citing *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 503-04 (6th Cir. 2008). Even if pleading complex schemes requiring particularized allegations, Plaintiffs must still "organize the complaint coherently." *Id.*

## IV.     DISCUSSION

Motions to amend and motions to dismiss are often, as is the case here, interrelated. PSI's motion to amend was presumably a means to address deficiencies, whether substantive or organizational, made clear in the motion to dismiss. The Court will address both motions simultaneously to save the time and expense of an additional motion to dismiss and the associated briefing.

### A.     Motion to Amend Counterclaim

Fed. R. Civ. P. 15(a) instructs courts to "freely give leave" to amend complaints "when justice so requires." Courts may deny motions to amend, however, when the proposed changes are futile and destined to fail. *See N. Am. Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1284 (6th Cir. 1997).

While PSI's proposed Amended Counterclaim pleads additional facts, it is otherwise substantively the same as its original counterclaim. The only notable difference is that PSI has relabeled one predicate act. Plaintiff's opposition to the motion to amend is largely supplementation of his earlier argument based on the futility of the amendment. The Court largely agrees with Plaintiff's arguments but finds it most efficient to grant the motion to amend. The amendment rewords some claims, and the associated briefing adds arguments relevant to the motion to dismiss. These considerations demand the amended complaint be substituted for the original. The arguments relevant to the motion to dismiss will be addressed in the appropriate section below. The Motion to Amend is granted.

### B. <u>Motion to Dismiss</u>

The parties' claims and arguments do not allow for tidy segmentation for analysis. As Rickett argues the state law claims are jurisdictionally improper without the federal claims, the Court will address the federal claims first. Upon establishing that jurisdiction exists, individual arguments against the state law claims are addressed.

#### 1. *RICO*

"[A]ny person injured in his business or property" by RICO violations may sue for damages. 18 U.S.C. 1964(c). A violation of the statute requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985)). "Racketeering activity" is defined to include a long list of enumerated offenses including wire fraud and mail fraud. 18 U.S.C. § 1961(1). A "pattern" consists of at least two violations of the included activities, predicate acts, within the last ten years. 18 U.S.C. §1961(5). A recoverable RICO pattern "requires the showing of a relationship between the predicates and of the threat of continuing activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (internal quotation marks omitted) (citation omitted). Thus, a pattern of racketeering activity is properly pled in alleging at least two predicate acts and this "continuity plus" requirement. *Id.*

PSI has alleged four predicate acts: mail fraud, wire fraud, securities fraud, and violations of the CFAA. Neither securities fraud nor violations of the CFAA may serve as predicate acts for a civil RICO claim. Section 1961's list of racketeering activity does not include violations of the CFAA, and thus they may not serve as predicate offenses. *See* 18 U.S.C. § 1961(1); *accord Joe N. Pratt Ins. v. Doane*, No. CIV.A. V-07-07, 2008 WL 819011, at *8 (S.D. Tex. Mar. 20, 2008).

In 1995, Congress amended the RICO Act to prevent securities fraud's use as a predicate offense in civil claims. *See* Private Securities Litigation Reform Act, Pub. L. No. 104-67, § 107, 109 Stat. 737 (1995). "The purpose behind this amendment was to avoid duplicative recovery for fraud actionable under the securities laws . . . ." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012). Per Congressional mandate, therefore, PSI's securities fraud allegation may not serve as a predicate act.

In seeking to prevent duplicative causes of action, the PSLRA's prohibition on securities fraud's use as a predicate act also excludes some mail and wire fraud claims. "The amendment not only eliminates securities fraud as a predicate act in civil RICO claims, but also prevents plaintiffs from relying on other predicate acts if they are based on conduct that would have been actionable as securities fraud." *Ouwinga*, 694 F.3d at 790. "[M]ail or wire fraud [may not serve] as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Conf. Rep. 104-369, at 47 (1995).

PSI argues that *Ouwinga* allows its claims to proceed. (Reply to Mot. to Amend 8, DN 39). In *Ouwinga*, employees brought a RICO claim against the purveyors of a supposedly tax-deductible financial product, which utilized variable life insurance policies—i.e., securities—to obtain improper tax benefits. The securities transactions themselves were proper, though their arrangement and effect was to confer the allegedly improper tax benefits. The Sixth Circuit found the securities transactions were "not integral to or 'in connection with' the fraudulent scheme as a whole.'" *Id.* at 791 (citation omitted). The Court found those tax frauds could serve as predicate RICO acts despite being actionable as securities fraud. *Id*. The ruling, therefore, stands for the proposition that securities transactions, even if actionable as securities fraud, may

8

be part of predicate acts so long as those transactions are not integral to the scheme. That is not the case here.

Rickett has not articulated how the current claims might be brought as securities fraud, and thus how they are barred as predicate acts under the PSLRA. Nor, on that note, does PSI's amended counterclaim offer perfect clarity as to which factual allegations relate to which fraud. The Court finds, however, that Rickett's alleged wire fraud would be actionable as securities fraud and integral to the purported scheme. PSI alleges that the false statements communicated via internet radio, website advertisements, and emails (which constitute the alleged wire fraud) were intended "to deprive potential investors of money and property by getting them to invest . . . ." (Am. Countercl. ¶ 90). Rickett used mail fraud to solicit and sell counterfeit stock by "utiliz[ing] the U.S. Mail to perpetrate the scheme to defraud, to solicit and deliver such fraudulent documents." (Am. Countercl. ¶ 86). The purpose of Rickett's RICO enterprise, PSI claims, "was to defraud investors and creditors by misrepresenting Rickett's ownership of the Patents, his ability to develop [them], and then use those Patents to obtain additional investors . . . ." (Am. Countercl. ¶ 95). Despite the lack of clarity, it is difficult to imagine these allegations as anything other than mail and wire fraud "in connection with" the sale of securities. These allegations fall within the PSLRA's prohibition on securities fraud serving as a RICO predicate act.

Even were the mail fraud claim distinct from any securities fraud, PSI's mail fraud claim is insufficiently pleaded. PSI pleads "fraud in the sale of securities through the U.S. mail." (Am. Countercl. ¶ 80). "To satisfy FRCP 9(b), a plaintiff must at minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984) (mail fraud as RICO predicate must be pled with particularity). PSI

9

alleges Rickett sent "fraudulent stock certificates" to investors through the mail. It does not allege when or to whom the mailings were made. Nor does it allege Rickett raised any money in this manner. From this it is unclear if anyone, let alone PSI, detrimentally relied on the alleged fraud. PSI has not made any such allegations.

First party reliance is not a requirement of a civil RICO claim predicated on mail fraud. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 649 (2008) (citation omitted). Nonetheless, a claimant must still allege "some direct relation between the injury asserted and the injurious conduct alleged." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 356 (6th Cir. 2008). "In most cases, the plaintiff will not be able to establish even but-for causation if no one relied on the misrepresentation.[] In addition, the complete absence of reliance may prevent the plaintiff from establishing proximate cause." *Bridge*, 553 U.S. at 658-59. PSI has failed to plead causation. The only specific injury PSI alleges for its RICO claim, the loss of a $65,000,000, the counterclaim relates only to its allegation of wire fraud. (Am. Countercl. ¶ 96, DN 34-1). Because PSI has failed to identify any recipients of fraudulent mailings, the dates on which these mailings were sent, or any direct harm to it from the mail fraud, it has no theory of damages. The mail fraud claim fails for a lack of particularity and may not serve as a predicate RICO act.

PSI's RICO counterclaim will be dismissed pursuant to Rule 12(b)(6). The pattern of racketeering activity in a civil RICO claim must include at least two predicate acts. Here, PSI has alleged only one, and that assumes the one (wire fraud) is not so related to the securities fraud so as to be prohibited under the PSLRA. Neither the CFAA nor the securities fraud may serve as predicate acts. Mail fraud, even were it distinct from the securities fraud, is insufficiently pleaded. The proposed amended counterclaim's organizational reworking does not overcome these hurdles. Rickett's motion to dismiss with respect to the RICO claim will be GRANTED.

### 2. *Computer Fraud and Abuse Act Claim*

Despite its unavailability to serve as a predicate offense for a civil RICO claim, violations of the CFAA are independently actionable. The CFAA contains a provision for civil liability, *see* 18 U.S.C. § 1030(g), and should PSI have properly alleged a violation of the CFAA that claim could independently survive a 12(b)(6) motion. Two of PSI's three CFAA claims, however, are insufficient to state a claim under the CFAA.

PSI has alleged violations of three provisions relating to Rickett's use of the PSI-provided laptop after his termination from the company. As alleged in this case, the potential violations of the CFAA may be asserted against against a person who: (i) "intentionally accesses a computer without authorization or exceeds authorized access" to obtain information; (ii) knowingly and with intent to defraud" obtains access to a "protected computer without authorization, or exceeds authorized access," and commits fraud; or (iii) "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer . . . ." 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(A).

Civil actions for violations of these provisions may be brought if certain types of harm result, including the loss of $5,000 within a year period. 18 U.S.C. § 1030(g); 18 U.S.C. § 1030(c)(4)(A)(i). This is the only actionable harm at issue in the present case. While the parties concede the laptop is a protected computer, they disagree whether Rickett's access was unauthorized. Assuming unauthorized access took place, the parties disagree whether PSI alleged resulting damages.

Preliminarily, the case law is unclear whether violations of the CFAA must be pled with particularity. Rickett argues violations of Section 1030(a)(4), requiring an "intent to defraud," trigger Fed. R. Civ. P. 9(b)'s particularity requirement. (Resp. to Mot. to Amend 4, DN 38). He provides no supporting citations, and PSI does not address the point. "The balance of authority, however, appears to support the view that Rule 9(b) does not apply to § 1030(a)(4)." *Sprint Nextel Corp. v. Simple Cell, Inc.*, No. CIV. CCB-13-617, 2013 WL 3776933, at *6 (D. Md. July 17, 2013). *See also Expert Janitorial, LLC v. Williams*, No. 3:09-CV-283, 2010 WL 908740, at *7 (E.D. Tenn. Mar. 12, 2010) ("[T]he Court notes that defendants have cited no case law, nor does the text of the statute itself suggest that a claim under the CFAA requires pleading with particularity.") In the absence of controlling authority or supported argument, this Court will not apply the particularity requirement to PSI's CFAA claims.

Violations of Section 1030(a)(2)(c) and (a)(4) require accessing a protected computer without authorization, or access in excess of authorization. *See* 18 U.S.C. §§ 1030(a)(2)(c) & (a)(4). Rickett argues that his use of the PSI-supplied laptop after his termination does not qualify as access in excess of authorization under the statute. In support of this argument, he urges this Court to adopt a narrow construction of the phrase "exceeds authorized access."[4] On the current motion, the Court fails to see how this distinction is relevant.

Rickett contends, without citations relating to post-termination use, that his use of the laptop after his relationship with PSI was terminated does not fall within this narrower reading of

---

[4] While some courts find employees may "exceed authorized access" in improperly using information from a computer to which they have legitimate access, other courts hold only the action of illegitimately accessing a computer violates the CFAA. *Compare LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) (employee who improperly used properly accessed material did not "exceed access" within meaning of CFAA), *with Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006) (installing malicious program on computer to which employee was authorized to access "exceeds access" within meaning of CFAA).

"exceeds authorized access." (Mot. to Dismiss 10-11, DN 31-1). Rickett concedes he was terminated in late March 2014 and merely posits use after this date is outside the intended scope of the statute. *Id.* Without authorization to use the computer, whether Rickett's activities would have been permissible with authorization is irrelevant. Courts, including those adopting Rickett's preferred interpretation of "exceeds authorized access," assume employers may rescind authorization. *See LVRC*, 581 F.3d at 1333. Terminating an employee is a clear indication of rescinded authorization. PSI has properly alleged that Rickett "exceeded authorized access."

Under Section 1030(a)(4), Rickett must have furthered his fraudulent scheme and obtained something of value (or obtained over $5,000 worth of use out of the protected computer). PSI alleges Rickett solicited stock purchases and manufactured fake stock certificates through the use of this computer. (Am. Countercl. ¶ 99). None of PSI's allegations, however, specify that Rickett received anything of value. Fake stock certificates definitionally have no value. PSI has not alleged Rickett took proprietary information from the computer or otherwise received valuable information or property, even for example by actually accepting funds for fraudulent stock purchases. PSI has failed to state a claim. This claim will be dismissed under Rule 12(b)(6).

PSI's claim under Section 1030(a)(5)(1) will also be dismissed. PSI repeatedly alleges Rickett used the laptop to "cause the transmission of a program which manipulated information and software." (Am. Countercl. ¶ 100). These allegations do little more than parrot the language of Section 1030(a)(5)(1). *See* 18 U.S.C. § 1030(a)(5)(1) ("causes the transmission of a program . . . ."). PSI offers no greater specificity as to what data might have been lost, what software or mechanism might have been used, or the harm to its system this might have caused. PSI's damages from this violation are also unspecified. PSI argues it cannot know the extent of

13

its damage until the Court permits a forensic examination of the laptop at issue. (Resp. to Mot. to Dismiss 19, DN 35). Any damage to its system, however, should have been perceptible without careful examination of the single laptop at issue, even if exact identification required examination of the program's source. If the damage PSI suffered is limited to this single laptop, this Court cannot imagine the damages reaching the $5,000 statutory minimum. If the damage claimed from the transmission of a malignant program was systemic, PSI's need to examine the laptop before estimating damages appears a calculated distraction. The extent of damage to PSI's system, while certainly informed by an examination of a laptop, should have been estimable before its counterclaim. PSI does allege some equipment was replaced to prevent further access by Rickett, though it does not tie this damage to transmission of a malignant program. (Am. Countercl. ¶ 102). While, as the Court has noted, particularity is not required in CFAA allegations, a *prima facie* case is. In merely parroting the terms of the statute and inadequately asserting damages, PSI's Section 1030(a)(5)(1) claim fails to meet its pleading burden.

PSI's final CFAA claim, which centers around Rickett's purported access of PSI's chairman's email, must also be dismissed. To violate Section 1030(a)(2)(c), Rickett must have "obtain[ed] information from any protected computer" to which he was not entitled access. PSI contends Rickett "manipulate[d] emails and data belonging to PSI's Chairman of the Board. (Am. Countercl. ¶ 100). This states a plausible violation of Section 1030(a)(2)(c). *See United States v. Ledgard*, 583 F. App'x 654 (9th Cir. 2014) (trier of fact could find accessing another's Hotmail account criminally violated 1030(a)(2)(c)); *United States v. Kernell*, No. 3:08-CR-142, 2010 WL 1491873, at *16 (E.D. Tenn. Mar. 31, 2010), *report and recommendation adopted*, No. 3:08-CR-142, 2010 WL 1490921 (E.D. Tenn. Apr. 13, 2010) (accessing Sarah Palin's email account in criminal violation of Section 1030(a)(c)(2)). To recover civilly, however, PSI must

still plead adequate damages. PSI alleges it was forced to purchase "new computers, security systems, and servers to insure that Rickett could no longer access its systems." (Am. Countercl. ¶ 102). This is the violation to which it ties these damages. The emails to and from the Chairman in the record, however, list a Gmail address. (Smith's 1-17-14 Email, DN 1-2; Smith 2-22-14 Email, DN 1-4). The Court fails to see how a compromised Gmail account necessitated the replacement of computer and security equipment. To the extent this damage was caused by Rickett, it was not caused by his violation of the CFAA. More importantly, even were the replacement of this equipment attributable to the CFAA violation, PSI has not alleged that equipment's loss totaled $5,000. Stripped of an allegation of a compromised email account, PSI has alleged only that Rickett used the laptop to "manipulate data belonging to PSI's Chairman of the Board." This is insufficient factual support to allege Rickett "obtain[ed] information from any protected computer." This claim will be dismissed under Rule 12(b)(6).

        3.    *Supplemental Jurisdiction*

Rickett argues that should the federal claims be dismissed, this Court may not exercise supplemental jurisdiction because the state-law claims do not form "part of the same case or controversy." (Mot. to Dismiss 15). Under 28 U.S.C. § 1367(a), which provides a basis for jurisdiction, this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Thus, to the extent that the state-law claims form part of the same "case or controversy," this Court would have supplemental jurisdiction over the claims against Rickett.

The claims providing original jurisdiction are Rickett's defamation and invasion of privacy claims. These are asserted on the basis of diversity jurisdiction. Rickett's claims PSI

15

defamed him when it published misleading information on its website and disparaged him on internet radio regarding his actions while in a business relationship with PSI. PSI's twenty-seventh defense (of thirty-nine) is the defense of truth. (Answer 7, DN 26). In disproving this defense, at least, the entirety of PSI and Rickett's interactions will be relevant. This brings any fraud, conversion, or breach of the NDA (contract) within the same case or controversy as the defamation and invasion of privacy charges. To the extent original jurisdiction is lacking in the counterclaim itself, this Court will assert supplemental jurisdiction over the state-law counterclaims against Rickett.[5]

### 4. *Fraud Claim*

Rickett argues that even if this Court has jurisdiction over the fraud claim, it has been stated with insufficient particularity. In so arguing, Rickett relies on his arguments concerning the deficiencies in PSI's particularity regarding mail and wire fraud. While allegations of mail and wire fraud too must be stated with particularity, the elements of common-law fraud differ. With differing elements, the particularity required differs. Rickett's arguments for mail and wire fraud's lacking do not necessarily indicate failing in the pleadings for common law fraud.

To particularly plead a claim for fraud, a plaintiff must plead, at minimum, "the time, place and contents of the misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bender*, at 1216. In Kentucky, fraud plaintiffs must plead a defendant "1) made a material representation; 2) which was false; 3) which was known to be false or was recklessly made; 4) and which was made to induce [plaintiff] to act; 5) that [plaintiff] acted in reliance upon the misrepresentation;

---

[5] Rickett is not the only party named in two of the state-law claims. In their fraud and breach of contract claims, PSI names Rickett and Schoenthaler. Schoenthaler has been joined as a third-party pursuant to Fed. R. Civ. P. 14. The record does not indicate that Schoenthaler has been served. As yet, he does not appear to be a party to this action.

and 6) which caused injury to [plaintiff]." *Elendt v. Green Tree Servicing, LLC*, 443 S.W.3d 612, 615 (Ky. App. 2014).

While not organized in the most cohesive fashion, plaintiff's amended counterclaim sets out these elements of a fraud claim. PSI alleges on November 7, 2013 Shoenthaler introduced Rickett to PSI's chairman. (Am. Countercl. ¶ 24). The amended counterclaim also alleges Rickett assigned all his rights and interests in the patents, of which PSI claims he had none, to PSI on January 6, 2014. (Am. Countercl. ¶ 35). While the place of these representations is not specifically alleged, the amended claim's allegations seem to take place in Kentucky and Florida. (Am. Countercl. ¶¶ 66, 36). Details concerning other PSI claims indicate activity in Pennsylvania and Texas. (Am. Countercl. ¶¶ 48, 89). While greater place specificity might be preferred, the fraudulent communications alleged were primarily telephonic and electronic, and thus the lack of geographic specificity is understandable. A date range, 2012 to 2014, is provided for the misrepresentations generally (Am. Countercl. ¶¶ 109, 114), while more specific dates are alleged near the end of PSI's involvement with Rickett, though not necessarily related to the state-law fraud claims (Am. Countercl. ¶¶ 61, 68, 70). These allegations add sufficient time and place particularity to the allegations of material false representations. Among the frauds' contents, Rickett misrepresented (a) his "knowledge of the Styrofoam reclamation machine; (b) [his] knowledge about the Styrofoam reclamation process; (c) [his] and Schoenthaler's ownership of the Patents; (d) [his] development of the Styrofoam reclamation machine and its ability to work; (e) [his] ability to reproduce the reclamation machine; and that (f) [he] was prosecuting a case to 'recover his Patents through litigation in Florida.'" (Am. Countercl. ¶¶ 109, 110). PSI claims it was these representations that induced PSI to hire Rickett and spend money conducting due diligence on the patents thereby incurring damages of $77,000. (Am. Countercl. ¶ 116). These

frauds were perpetrated so that Rickett might dupe both PSI and other individuals to invest. While certainly PSI's fraud allegations are not fully formed, their counterclaim satisfies Rule 9(b)'s requirements. The fraud claim will not be dismissed for lacking particularity.

## V. CONCLUSION

PSI's RICO and CFAA claims will be dismissed for failure to state a claim under Rule 12(b)(6). PSI has failed to allege at least two predicate acts for its RICO claim, and its CFAA claims fail because PSI has not alleged Rickett obtained anything of value of caused damage to PSI. The remaining state-law claims against Rickett are valid.

Accordingly, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** It is granted as to the RICO and CFAA claims. It is denied with respect to PSI's fraud, conversion, breach of contract, and unjust enrichment claims against Rickett. Those claims remain viable. The Motion to Amend (DN 34) is **GRANTED**.

Greg N. Stivers, Judge
United States District Court
June 5, 2015

cc: counsel of record